FREDERICK A. DAYNES *vs.* TIMOTHY F. QUINN & another.

Suffolk.    December 3, 1909. — January 7, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.

In an action by a longshoreman of ten years' experience against a stevedore by whom he was employed, for personal injuries incurred while obeying the orders of the defendant's superintendent who was alleged to have set the plaintiff at work in a dangerous place, it appeared that the plaintiff, who had been working in the hold of a vessel, had come on deck to take part in putting on a hatch cover for the night, that before the hatch cover was put in place it was necessary to put in place heavy timbers fitting into slots in the coaming of the hatch to support the cover, these timbers being called "fore and afts," that at the time of the accident one of these fore and aft timbers had been slung on the fall of the winch and was about to be lowered into position, that the plaintiff was standing on the port side of the vessel and the defendant's superintendent in charge of the work told him to steady the port side of the forward end of the timber as it was lowered into position, saying to him, " Get in there, get hold of the fore and aft," that to do this the plaintiff had to step in between the winch and the forward end of the coaming, that the superintendent gave the order to lower, the winch was started and the plaintiff's left leg was caught between the crank shaft of the driving wheel and the coaming and was released only by reversing the engine. It appeared that the reason the plaintiff's leg was caught was that he placed it in the path of the crank shaft, and, by a proper interpretation of the

testimony, it also appeared that the plaintiff could have carried out the order of the superintendent in safety without putting his leg in the path of the crank shaft. The presiding judge ordered a verdict for the defendant. The plaintiff, upon exceptions alleged by him, contended that the defendant's superintendent was negligent, either in ordering the plaintiff to "get in" between the end of the coaming and the winch without warning him of the danger, or else was negligent in giving the order to lower without first ascertaining whether the plaintiff had got out of harm's way. *Held*, that the superintendent had no reason to suppose that a longshoreman of ten years' experience ought to be warned of the dangers incident to an ordinary winch and an ordinary hatch cover or to the two in combination, and that it was not the duty of the superintendent before giving the order to lower the timber to find out whether such an experienced longshoreman had taken his stand in the path of the crank shaft; and accordingly that the judge was right in ordering a verdict for the defendant.

TORT for personal injuries incurred by the plaintiff while in the employ of the defendants at about 6 P. M. on September 7, 1905, in the manner described in the opinion, with two counts, the first at common law, alleging negligence of the defendants in setting the plaintiff at work in a dangerous place without warning him of the danger and in failing properly to safeguard winches and other machinery, and the second count under R. L. c. 106, § 71, cl. 2, alleging negligence of a superintendent of the defendants in ordering the plaintiff to work in a dangerous and unsafe place. Writ dated November 6, 1905.

In the Superior Court the case was tried before *Dana*, J., who ordered a verdict for the defendants. The plaintiff alleged exceptions, there being inserted in the bill of exceptions an agreement of the parties that, if the plaintiff's exceptions were overruled, the defendants were to reimburse the plaintiff for half the stenographer's bill and the entire clerk's bill for printing exceptions; and that, if the plaintiff's exceptions were sustained, the plaintiff should have judgment for $450, the defendants to pay, in addition to the regular items taxed as costs, the entire stenographer's bill and for printing the bill of exceptions.

*A. Berenson*, for the plaintiff.

*W. H. Hitchcock*, (*C. M. Pratt* with him,) for the defendants.

LORING, J. The plaintiff was a longshoreman of ten years' experience in the employ of the defendants who were stevedores. On the day of the accident here complained of the defendants were engaged in unloading the vessel on which the accident oc-

curred.  The plaintiff (who after ten o'clock on that morning
had been working in the hold) came on deck just before six
o'clock in the afternoon and was directed by one Hampton (who
was in charge of the work and was admitted to be a superintend-
ent within R. L. c. 106, § 71, cl. 2) to take part in putting on
the hatch cover for the night.  The hatch was about twenty
feet long and from twelve to fifteen feet wide.  The coamings of
the hatch rose about three feet above the deck.  The first thing
to be done in putting on the hatch cover was to put in place
heavy timbers running from end to end of the hatch, called
" fore and afts."  These timbers fitted in slots, made for the
purpose of receiving them, inside the coaming and about three
or four inches below the top of it.

The jury were warranted in finding that when the plaintiff
came on deck one of the fore and aft timbers, which had been
slung on the fall of the winch, was hanging over and above the
hatch.  There were two men on the after end to guide that end
into the after slot as the timber was lowered into position, and
one man on the forward end on the starboard side.  The fore
and aft timber " was lying off shore," that is, on the starboard
side; and when the plaintiff was told to help in steadying it
as it was lowered, it was about three feet away from the slot and
to the starboard side of it.  The plaintiff was on the port side of
the vessel and was told by Hampton to steady the port side
of the forward end as the timber was lowered into position.
The plaintiff testified that Hampton's words were: " Get in
there, get hold of the fore and aft."  To do this the plaintiff
had to step and did step in between the winch and the forward
end of the coaming.  Hampton immediately gave the order to
lower, the winch was started, and the plaintiff's left leg was
caught between the crank shaft of the driving wheel and the
coaming and was released only by reversing the engine.

When the winch was at rest there was about a foot between
the end of the crank shaft and the bulkhead which makes the
forward end of the coaming.  But when the crank shaft reached
its limit in the revolution of the driving wheel it was within
three inches of this bulkhead.

The reason why the plaintiff's leg was caught was because in
stepping in from the port side of the vessel to steady the port

side of the forward end of the "fore and aft" he placed his leg in the path of the crank shaft. Of necessity his back was to the winch and his left leg was further in than his right.

The plaintiff's contention is that Hampton "was either negligent when he ordered the plaintiff to 'get in' between the coamings and the winch without informing himself or plaintiff or warning plaintiff of the danger, or else he was negligent when he gave the order to lower without first ascertaining whether or not the plaintiff had gotten out of harm's way."

The plaintiff was a longshoreman of ten years' experience, and Hampton had no reason to suppose that he ought to be warned of the dangers incident to an ordinary winch and to an ordinary hatch cover, or to the two in combination.

There was no question of the plaintiff's having "gotten out of harm's way," as his counsel has argued. The only possible question was whether the plaintiff had or had not taken his stand in the path of the crank shaft. There was no duty on the superintendent to find out whether a longshoreman of ten years' experience had done that before giving the order to lower the timber.

The only question in the case which raises a doubt comes from the testimony of the winchman. On direct examination he testified in answer to the question whether he saw him in front of the winch, "No, he couldn't get in front of the winch. He could not get in there," and on cross-examination, "There was no room for a man to get between the two driving wheels if he wanted to because there was a bar right across there. This bar was connected with the cog wheels. The cog wheels are in back of the driving wheels 'on the inside of them.'" The learned counsel for the plaintiff has contended that "The plaintiff could only avoid the accident by refusing to carry out the order." This contention was made by him in connection with the question of the plaintiff's contributory negligence, and the testimony set forth above was not referred to by the learned counsel at all, either in argument or on his brief.

This testimony cannot be taken to mean that there was a rod (connecting the two shafts) which came as near to the coaming as the ends of the crank shafts did, and that for that reason the plaintiff could not stand with safety between the coaming and the winch outside the paths of the crank shafts. If this testi-

mony does not mean that, it is plain that the plaintiff could have executed the order with safety if he had not put his leg in the path of the crank shaft.

The entry must be exceptions overruled; and by the terms of the agreement set forth in the bill of exceptions, on payment by the defendant to the plaintiff of "half of the stenographer's bill and the entire clerk's bill for printing exceptions," judgment is to be entered for the defendant.

*So ordered.*